IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
SENIOR JUDGE WALKER D. MILLER

Civil Action No. 07-cv-02143-WDM-KMT

UNISCOPE, INC., a Colorado corporation,

     Plaintiff,

v.

TEMBEC BTLSR, INC., a Delaware corporation, et al.,

     Defendants.

v.

CARGILL, INC., a Delaware corporation, et al.,

     Third Party Plaintiffs

---

## ORDER ON MOTION TO DISMISS

---

Miller, J.

     This matter is before me on the Motion to Dismiss (doc no 65) filed by

Defendants Tembec Inc., n/k/a Tembec Holdings Inc. ("Tembec"), Tembec Industries

Inc. ("Industries"), Tembec Enterprises Inc. ("Enterprises"), Tembec Resin Group, and

Tembec Chemical Group, collectively "Tembec Canada." Tembec Canada seek

dismissal of Plaintiff's complaint and the third party complaint filed by various entities

associated with Cargill, Inc. (collectively "Cargill") for lack of personal jurisdiction.

Plaintiff and Cargill oppose the motion. Upon review of the parties' filings, I conclude

oral argument is not required. For the reasons that follow, the motion to dismiss will be

granted as to Enterprises, Tembec Chemical Group, and Tembec Resin Group and will

be denied without prejudice as to the remaining Defendants.

Background

Plaintiff Uniscope, Inc., is a Colorado corporation with a principal place of business in Johnstown, Colorado. Complaint ¶ 1. Plaintiff manufactures and sells a variety of binding additives for use by feed manufacturers. *Id.* Defendant Tembec BTLSR, Inc. ("BTLSR") is a Delaware company with its principal place of business in Toledo, Ohio, which manufactures spray-dried resins. *Id.* at ¶ 2. BTLSR is a wholly owned subsidiary of Industries, which is in turn 100% owned by Tembec, albeit indirectly. Declaration of Lawrence Rowley (doc no 68) at ¶ 6; Declaration of John Valley (doc no 67) at ¶ 13; Org. Chart (doc no 82-8). Tembec is a diversified and integrated forest products company with four primary areas of business: (1) forest products, including forest and sawmill operations; (2) pulp, including the manufacturing and marketing of paper and specialty pulp; (3) paper, primarily sales newsprint and bleached paper board; and (4) chemicals, including resins and lignin products. Valley Decl. (doc no 67) at ¶ 3. Tembec acquired a Toledo, Ohio based resin manufacturing company in October 2003[1], which became BTLSR. Rowley Decl. (doc no 68) at ¶ 7.

Beginning January 2004, Plaintiff began purchasing a particular kind of urea formaldehyde resin (the "Resin") from Tembec BTLSR and/or Tembec Canada. Complaint at ¶ 52. Plaintiff used the Resin in several of its feed binder products. *Id.* at ¶ 60. In May 2007, Plaintiff learned that the Resin contained melamine, which is not approved for use in livestock or aquatic fees. *Id.* at ¶¶ 68-77. Defendants did not

---

[1]Before its acquisition, the company was known as BTLSR Toledo, Inc. Rowley Decl. (doc no 68) at ¶ 7.

previously disclose to Plaintiff that the Resin contained melamine. *Id.* at ¶¶ 63-67. After

learning of the melamine adulteration, Plaintiff contacted the Food and Drug

Administration. *Id.* at ¶ 89. The FDA investigated Plaintiff and its products, resulting in

a recall of products shipped to Plaintiff's customers and significant costs to Plaintiff. *Id.*

at ¶¶ 89-91. Plaintiff filed this lawsuit against BTLSR and the Tembec Canada entities,

asserting numerous claims for relief. Third Party Plaintiffs Cargill are purchasers of the

tainted binders, used in Cargill's various feed products, and have filed a third party

complaint against Plaintiff and the same Tembec entities for losses resulting from the

recall.

The parties do not dispute that this court has personal jurisdiction over BTLSR.

Tembec Canada assert that personal jurisdiction is lacking over the remaining

defendants because (1) Tembec Resin Group and Tembec Chemical Group are not

legal entities capable of being sued, but rather are internal organizational labels for

business divisions; and (2) Tembec, Industries, and Enterprises do not have the

necessary minimum contacts with the State of Colorado and, even if they did, it would

violate traditional notions of fair play and substantial justice under the Due Process

clause to require them to defend this lawsuit in Colorado.

Plaintiff asserts two broad grounds for personal jurisdiction: (1) BTLSR is the

alter ego or general agent for Tembec Canada, which is an integrated entity; or (2)

Industries and/or Tembec sold lignin product to Plaintiff for many years, resulting in the

execution of written agreements governed by Colorado law, numerous visits to

Colorado by Tembec's agents and representatives, numerous communications with

Plaintiff in Colorado, and delivery of product to Colorado, all of which give rise to

3

general jurisdiction over these defendants.

Standard of Review

In determining whether the exercise of personal jurisdiction over an out-of-state defendant is appropriate, federal courts undertake two inquiries: whether there is a basis for jurisdiction under the forum state's long-arm statute and whether the exercise of that jurisdiction comports with principles of federal due process. *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 455 (10th Cir. 1996). Because Colorado's long-arm statute reaches "to the fullest extent permitted by the due process clause of the fourteenth amendment to the United States Constitution," *Safari Outfitters, Inc. v. Superior Court,* 167 Colo. 456, 459, 448 P.2d 783, 784 (1968), the only issue before me is whether exercising personal jurisdiction over Tembec Canada in this case is consistent with federal due process. *Kuenzle*, 102 F.3d at 455.

Whether the exercise of personal jurisdiction comports with due process is determined under federal law. *SGI Air Holdings II LLC v. Novartis Int'l AG*, 239 F. Supp. 2d 1161, 1163 (D. Colo. 2003). To comport with due process, the plaintiff must show that the defendant has had adequate minimum contacts with the forum state and that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Id*. (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)).

Personal jurisdiction over defendants may be either general or specific. General jurisdiction exists when the defendant's contacts with the forum state are so "continuous and systematic" that jurisdiction is appropriate even when the claims are unrelated to the defendant's contacts with the forum state. *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996). In contrast, specific jurisdiction exists when

4

the defendant has "purposely directed" activities at residents of the forum and the litigation results from alleged injuries arising out of or relating to those activities. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985).

Once the requisite minimum contacts are established, I must still determine whether exercising personal jurisdiction would offend traditional notions of fair play and substantial justice, based on the circumstances of the case. *AST Sports Science, Inc. v. CLF Distrib. Ltd.,* 514 F.3d 1054, 1061 (10th Cir. 2008). Factors I must consider in this analysis include: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.*

Plaintiff bears the burden of establishing personal jurisdiction over the foreign defendants. *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984). However, when the issue is raised before trial and decided on the basis of affidavits and other written materials, the plaintiff's burden is "light;" the plaintiff need only make a prima facie showing and all reasonable inferences must be drawn in the plaintiff's favor. *Id.*; *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Kozeny*, 115 F. Supp. 2d 1231, 1236 (D. Colo. 2000).

Discussion

1.  Tembec Resin Group and Tembec Chemical Group

Defendants have presented competent evidence by affidavit that "Tembec Resin Group" and "Tembec Chemical Group" are not legal entities capable of being sued.

Declaration of Gianfranco Guist (doc no 69) at ¶ 4.  Rather, Tembec Chemical Group is one of the business sections of the Tembec group of companies, and the Resin Division (not Resin Group) is similarly an internal organizational label.  *Id.* at ¶¶ 5-6.  Plaintiff and Cargill have not presented any evidence that these are incorporated or registered entities.  Rather, they offer evidence that the names "Chemical Group" and "Resin Group" appear on stationery and business cards and seek further discovery on the issue.  Plaintiff's have not made a prima facie showing that these defendants are separate business entities capable of being sued or that further discovery is likely to lead to evidence of such.  Accordingly, Defendants Tembec Resin Group and Tembec Chemical Group should be dismissed as defendants from this lawsuit.

   2.  Previous Business Relationship

  Defendants present evidence by affidavit that the Tembec Canada Defendants are all Canadian corporations with principal offices in Quebec, and that none has offices or real property in Colorado, is licensed to do business in Colorado, or has employees in Colorado.  Valley Decl. (doc no 67) at ¶¶ 19-22.  Defendants also assert that none of the factors often considered in whether general jurisdiction is present applies here: (1) the corporation's solicitation of business in the state through local offices or agents; (2) the corporation's sending agents into the state on a regular basis to solicit business; (3) the corporation's holding itself out as doing business in the forum state through advertisements, listings, or bank accounts; or (4) the volume of business conducted in the state by the corporation.  *Kuenzle*, 102 F.3d at 457.

  Plaintiff and Cargill assert that general jurisdiction is appropriate because of previous business contacts in the state by Tembec and/or Industries, specifically from

6

the sale of lignin[2] to Plaintiff from the 1990s to 2007. The identity of the company

selling the lignin is somewhat unclear. According to affidavits offered by Defendants,

Plaintiff solicited Industries to manufacture binding agents, comprised of Industries'

lignin and Plaintiff's proprietary additives. Oldroyd Decl. (doc no 70) at ¶¶ 5-6. The

finished product was shipped from Canada directly to customers or to Plaintiff's facility

in Johnstown, Colorado. *Id.* at ¶ 6. Industries admits that its representatives visited

Plaintiff's facility in Colorado about once a year. *Id.* at ¶ 7. Plaintiff's evidence,

however, also includes a contract regarding the sale of lignin products entered between

"Tembec, Inc., Chemical Division" and Plaintiff, dated March 8, 1996, and appointing

Tembec as Plaintiff's sole Canadian distributor for its proprietary binding products.

Affidavit of Richard Mommer, Jr. (doc no 80-2) at ¶ 3; Exh. P (doc no 80-17). Similarly,

a confidentiality agreement, dated May 27, 1996, was executed by and between

"Tembec, Inc., Chemical Division" and Plaintiff. Mommer Aff. (doc no 80-2) at ¶ 3; Exh.

Q (doc no 80-18). Both agreements expressly state that they are governed by Colorado

law. Plaintiff has evidence that Tembec and/or Industries made monthly payments to

Plaintiff in Colorado in the form of royalties and payments for feed additives purchased

by Tembec and/or Industries. Mommer Aff. (doc no 80-2) at ¶ 4. In addition, as noted,

---

[2]According to Tembec Canada, the Chemical Group (presumably comprised of various Tembec entities) produces resins, lignins, and alcohol. Valley Decl. (Doc no 67) at ¶ 4. There is no dispute that lignin is a separate product from the Resin at issue in this litigation. Resins are produced in three sites in Quebec and at Tembec BTLSR in Ohio. *Id.* at ¶¶ 4-5. It is unclear which Tembec entities own the three operating sites in Canada, although apparently one resin, lignin and alcohol plant is owned by Industries. *Id.* at ¶ 9. As noted above, Industries also is the 100% owner of BTLSR. It appears to be undisputed that the Resin sold to Plaintiff was developed and produced by BTLSR; the primary issue in dispute is whether Industries and Tembec are nonetheless liable for BTLSR's alleged torts. *Id.* at ¶ 7.

representatives of Industries and/or Tembec made at least annual visits to Plaintiff's facility in Colorado over a ten year period. *Id.* at ¶ 5. According to Plaintiff, over the course of the business relationship, there were frequent and recurring communications in Colorado, including telephone calls, invoices, emails, and other correspondence. *Id.* at ¶ 6. Plaintiff asserts that this long business relationship resulted in hundreds of thousands of dollars of revenue for Tembec and/or Industries. *Id.* at ¶ 7.

Giving Plaintiff the benefit of all reasonable inferences, I conclude that Plaintiff has met its prima facie burden of demonstrating that Industries and/or Tembec had sufficient minimum contacts with the state of Colorado for general jurisdiction. Plaintiff has established a course of conduct by Industries and/or Tembec over more than ten years involving regular communications, payments, and shipments of goods to Colorado. Most of this conduct occurred before 2003, when Tembec Canada acquired a U.S.-based subsidiary licensed to do business in Colorado. In addition, the agreements governing this business relationship expressly referred to Colorado law, which strengthens the inference that Tembec could reasonably anticipate litigation in Colorado. *Equifax Services, Inc. v. Hitz*, 905 F.2d 1355, 1359 (10th Cir.1990); *see also Plus System, Inc. v. New England Network, Inc.*, 804 F.Supp. 111, 118 (D. Colo. 1992). ("Common sense would dictate that a defendant is served notice of the high likelihood of being called to Colorado to answer disputes when it agrees to a Colorado choice of law clause and it deals with a Colorado-based entity for Colorado-based services.") The volume of sales appears to have been more than trivial. Plaintiff also alleges in the Complaint, and Defendants do not dispute, that Tembec and/or Industries also sold lignin to another customer in Colorado for some time. Complaint ¶ 16.

This relationship involved more than simply a contract between these defendants and the Plaintiff, which, standing alone, would not be sufficient to establish minimum contacts with the forum. *Benton v. Cameco Corp.*, 375 F.3d 1070, 1077 (10th Cir. 2004). In addition, the relationship derives from more than unilateral activity by Plaintiff in soliciting products from Industries and/or Tembec. *Doe v. National Medical Services*, 974 F.2d 143 (10th Cir. 1992). Unlike *Benton* or *Doe*, the business relationship between Industries and Plaintiff was lengthy and involved numerous and substantive contacts with Colorado and appears to have been "continuous and systematic." The relationship continued up until the discovery of the melamine contamination in the Resin in 2007, when Plaintiff terminated all its business with the Tembec group of companies. Under the circumstances, Industries and/or Tembec could reasonably anticipate being haled into court in Colorado.

I thus turn to the next step of the analysis, which is whether exercising jurisdiction over Defendants Tembec and Industries is consistent with traditional notions of fair play and substantial justice. The first factor I consider is the burden on the defendant. Although Tembec and Industries are foreign corporations, I conclude the burden of litigating here is not unduly onerous. As noted, they have a U.S. subsidiary which is the primary actor in the dispute. This means that the representatives of the parent entities would already be traveling to the United States for business. Moreover, I note that all the Tembec entity defendants are represented by common counsel in this litigation. In addition, communications and travel between Quebec, Canada and Colorado is not difficult, and the need for travel is greatly reduced by the availability of electronic filing and telephone conferences. Tembec and Industries also conduct business in both

9

English and French, and so it does not appear that there are any language barriers for these defendants.

The second factor is the forum state's interest in resolving the dispute. Colorado has a strong interest in this matter, as the alleged injury was inflicted on a Colorado resident. In addition, the parties seem to agree that Colorado law will apply, which is another strong interest for Colorado. Accordingly, this factor weighs in favor of exercising jurisdiction.

Third, I must evaluate the plaintiff's interest in receiving convenient and effective relief. This factor again weighs toward exercising jurisdiction. It is undisputed that the primary defendant, BTLSR, is properly within this court's jurisdiction, as is Plaintiff. Plaintiff has a strong interest in resolving issues concerning all defendants in one proceeding, rather than multiple proceedings in different countries. Moreover, I agree with Plaintiff that it has more barriers to proceeding in Canada than are imposed on Defendants by litigating in Colorado. This also supports the fourth factor, the interstate judicial system's interest in obtaining the most efficient resolution of controversies. I note that many of the key witnesses are most likely in Colorado and Ohio and that Colorado law will most likely apply. These factors also support the exercise of jurisdiction.

Finally, I should consider the shared interest of the several states in furthering fundamental substantive social policies. The parties have not identified any ways that the exercise of jurisdiction over these entities will interfere with important Canadian sovereign interests, particularly since the injuries and applicable law are centered in Colorado.

As noted, it appears that Industries was the entity most involved in the lignin sales, but until the role of Tembec is clarified I will deny the motion as to both of these defendants. This denial is without prejudice, however, given the preliminary status of the case and the issue may be raised again in the future, if merited.

3. <u>Agency/Alter ego theories</u>

Plaintiff and Cargill also argue that personal jurisdiction over Tembec Canada is proper because BTLSR is a general agent for or alter ego of Tembec and/or Industries. Because I conclude that I have personal jurisdiction over these entities based on their previous systematic and continuous contacts with Colorado, I will not address this argument.

4. <u>Tembec Enterprises</u>

It is unclear what role, if any, Enterprises had in this dispute or what ownership interest it has in BTLSR. At most, it appears that Enterprises could be a successor entity to Industries. However, neither Plaintiff nor Cargill has provided any case law or other legal authority to show how personal jurisdiction can be attributed to Enterprises from the activities of BTLSR or Industries. Accordingly, I will grant the motion to dismiss as to Enterprises. Again, however, this dismissal is without prejudice to rejoining Enterprises as a party if personal jurisdiction can be established as discovery continues.

Accordingly, it is ordered:

1. The Motion to Dismiss (doc no 65) is granted in part and denied in part.

2. The motion is granted and all claims are dismissed against Defendants Tembec Resin Group and Tembec Chemical Group.

3. The motion is also granted as to Tembec Enterprises without prejudice.

11

4.      The motion is denied as to Defendants Tembec Inc., n/k/a Tembec

Holdings Inc., and Tembec Industries Inc.  I conclude that Plaintiff and

Cargill have met their prima facie burden to show that personal jurisdiction

exists as to these defendants.

5.      The case remains pending against Tembec BTLSR, Inc., Tembec Inc.,

n/k/a Tembec Holdings Inc., and Tembec Industries, Inc.

DATED at Denver, Colorado, on November 5, 2008.

BY THE COURT:


s/ Walker D. Miller
United States Senior District Judge